Ryan P. Atkinson #10673
Scarlet R. Smith #15024
Jordan T. Greenburg #18393
STRONG & HANNI, P.C.
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7080
ratkinson@strongandhanni.com
ssmith@strongandhanni.com
jgreenburg@strongandhanni.com

*Attorneys for Defendants ERC Specialists, LLC, Mark Sullivan,*
*Justin Atkinson, Josh Zieglowsky, Jacob Davis, Chandler Chavis,*
*Geri Bohn, and Rocky Crofts.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| QUALITY TELECOM CONSULTANTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ERC SPECIALISTS, LLC, a Utah limited liability company, MARK SULLIVAN, an individual, JUSTIN ATKINSON, an individual, JOSH ZIEGLOWSKY, an individual, JACOB DAVIS, an individual, CHANDLER CHAVIS, an individual, GERI BOHN, an individual, ROCKY CROFTS, an individual, and Roe Corporation(s), <br><br> Defendants. | **MOTION TO DISMISS** <br><br> Case No. 2:24-cv-00720-JCB <br><br> Magistrate Judge Jared C. Bennett |

Defendants ERC Specialists, LLC, Mark Sullivan, Justin Atkinson, Josh Zieglowsky, Jacob Davis, Chandler Chavis, Geri Bohn, and Rocky Crofts (collectively, ERC Specialists) submit this Motion to Dismiss for failure to state a claim upon which relief can be granted.

## SPECIFIC RELIEF SOUGHT

Each of Plaintiff's causes of action should be dismissed because they are not alleged with sufficient particularity and Plaintiff has suffered no damages. Without an allegation of a particularized harm, Plaintiff lacks standing to asserts such claims. Moreover, Plaintiff's allegations fail to establish with sufficient particularity the causes of actions alleged. Finally, the economic loss rule bars such claims.

## RELEVANT FACTS

On April 18, 2023, the parties entered into an agreement. Plaintiff retained ERC Specialists to "file the necessary documents with the Internal Revenue Service ("IRS") for [Plaintiff] to obtain the Employee Retention Tax Credit (the "Tax Credit") established pursuant to the Coronavirus Aid, Relief, and Economic Security Act." See Services Agreement, attached as Exhibit A. Plaintiff agreed to "pay ERC Specialists a fee equal to a percentage of the Tax Credit received." *Id.* § 2a. The parties agreed that if Plaintiff returns the credit or any "disqualified funds to the IRS," "ERC Specialists shall not be required to return the fee." *Id.* § 2d.

Plaintiff represented and warranted that all information it provided to ERC Specialists related to the tax credit was "true and correct." Ex. A, § 3b. In ALL CAPS, Plaintiff represented that it understood and assumed any risk involved in applying for the tax credit, including audit or penalty. *Id.* It also warranted that it would obtain advice from a CPA and attorney regarding its eligibility before filing the credit. *Id.*

In the Complaint, Plaintiff concedes it received the tax credit but voluntarily returned the credit to avoid hypothetical penalties. Complaint ¶ 43. It now sues ERC Specialists—not under the Services Agreement—but under fraud-based claims to seek a windfall.

2

<u>**LEGAL STANDARD**</u>

To withstand a motion to dismiss, the complaint must contain enough allegation of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is,

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reasons to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).

"[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The complaint must have enough heft to show the plaintiff is entitled to relief. Accordingly, if the allegations in the complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (citation and internal quotation marks omitted).

"This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claims against them." *Id.* at 1248. "Without some factual allegation in the complaint, it is hard to see how a complaint could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also grounds on which the claim

rests." *Id.* (citations and internal quotation marks omitted). *Twombly* was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 566 n.10.

When considering a motion filed under rule 9(b), the Court must examine the complaint to determine whether plaintiff has "set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof." *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991). The dismissal of a claim for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986).

In ruling on a motion to dismiss, the Court must accept all factual allegations as true and must draw all reasonable inferences in favor of the pleader. *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991). A claim should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.,* 927 F.2d 1111, 1115 (10th Cir. 1991).

## ARGUMENT

### I.  Plaintiff lacks standing.

"To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). "To answer that question in a way sufficient to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized,  and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "If the plaintiff does not claim to have suffered an injury that the

defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (citation and internal quotation marks omitted).

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *Id.* In other words, "a federal court may resolve a real controversy with real impact on real persons." *Id.* at 424 (citation and internal quotation marks omitted).

For standing purposes, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffered concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426. An uninjured plaintiff who sues to ensure compliance with a federal law to obtain money via the statutory damages provision is by definition not seeking remedy of any harm to herself. *Id.* at 427-28. And, under that scenario, Article III standing does not exist.

Here, Plaintiff seeks to obtain the damages permitted under the RICO statute and other Utah statutes. Complaint ¶¶ 46, 57, 64. But it can point to no redressable injury sustained as a result of ERC Specialists's alleged violations of these statutes.

### A.   <u>The costs of CPA and attorney fees are not injuries.</u>

The costs of bringing a lawsuit cannot serve as the sole basis for establishing damages. Where the plaintiff sues to establish violation of a statute, she must also establish that any purported damages stem from that specific violation. Otherwise, "that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 428 (2021).

Here, the agreement signed by Plaintiff sets out the parties' expectations and obligations (the Services Agreement).[1] In relevant part, Plaintiff assumed the risks of applying for the credit, promised it provided correct information to ERC Specialists, and acknowledged that it should first obtain a legal opinion or guidance from a CPA. Services Agreement 3. It also acknowledged that ERC Specialists only provided assistance in calculating the amount of the tax credit, not legal advice or substantiation on whether Plaintiff qualified. *Id.*

> b. **By Client.** Client represents and warrants that all information provided by Client, its directors, officers, agents, representatives, members, managers, employees, and assigns to ERC Specialists related to the Tax Credit or otherwise related to this Services Agreement is true and correct. CLIENT REPRESENTS AND WARRANTS THAT IT UNDERSTANDS AND ASSUMES ANY RISKS INVOLVED IN APPLYING FOR THE TAX CREDIT, INCLUDING THE RISK OF IRS AUDIT, CLAWBACK, OR ASSESSMENT OF PENALTIES AND FEES. CLIENT REPRESENTS AND WARRANTS THAT IT UNDERSTANDS THAT (I) ERC SPECIALISTS ONLY PROVIDES ASSISTANCE IN CALCULATING THE AMOUNT OF THE TAX CREDIT, IF ANY, THAT CLIENT MAY BE ELIGIBLE TO RECEIVE, (II) ERC SPECIALISTS DOES NOT PROVIDE LEGAL ADVICE AND CLIENT IS SOLELY RESPONSIBLE FOR DETERMINING, EITHER ITSELF OR WITH THE ASSISTANCE OF AN ATTORNEY OR CERTIFIED PUBLIC ACCOUNTANT, WHETHER IT IS ELIGIBLE FOR THE TAX CREDIT, AND (III) CLIENT HAS BEEN ADVISED TO OBTAIN A LEGAL OPINION FROM AN ATTORNEY REGARDING ITS ELIGIBILITY FOR THE TAX CREDIT AND CLIENT HAS EITHER OBTAINED SUCH AN OPINION OR CHOSEN TO APPLY FOR THE TAX CREDIT WITHOUT FIRST OBTAINING SUCH AN OPINION.

*Id.*

As part of the parties' bargain, Plaintiff agreed to consult a CPA and attorney regarding the tax credit. Yet, it alleges it was "financially injured by having to retain a separate and professional tax consulting firm" and "by having to retain counsel to assist them in the filing of this suit." Complaint ¶¶ 42, 44.

The costs of retaining a CPA to determine "whether it is eligible for the tax credit" were anticipated in the parties' bargain. Plaintiff agreed to have this done before filing for the credit. Services Agreement 3. Likewise, Plaintiff agreed to seek guidance from an attorney as well. *Id.*

---

[1] Plaintiff has incorporated by reference the services agreement between Plaintiff and ERC Specialists. Complaint ¶ 21.

Without a concrete harm—a harm that can be redressed by the court—the fees incurred to bring a lawsuit cannot serve as the alleged injury.

**B.** **Plaintiff assumed the risks of "IRS audit, clawback, or assessment of penalties and fees."**

The only other alleged injury was the "paying hundreds of thousands of dollars to ERCS" to assist in filing for the tax credit. Complaint ¶ 43. By its own admissions,[2] this purported harm stems from its voluntary return of the credit and the fees to recoup the money it paid for work successfully rendered by ERC Specialists. Complaint ¶ 43.

Plaintiff implicitly concedes it received the ERC tax credit but later returned the credit to the IRS. Complaint ¶ 43. Not only does this make clear that ERC Specialists performed the work it set out to do—assist Plaintiff in receiving a credit—but it also shows that Plaintiff received the credit. It had the benefits of the credit. It also voluntarily returned the credit to the IRS to avoid a hypothetical penalty. Indeed, Plaintiff concedes it suffered no penalties in receiving the credit. Complaint ¶ 43.

Plaintiff agreed, in the Services Agreement, that "it understands and assumes any risks involved in applying for the tax credit, **including the risk of IRS audit, clawback, or assessment of penalties or fees**." Ex. A, § 3b. Certainly, sending the credit back to the IRS "to avoid facing harsh penalties" is risk assumed under this provision.

Nevertheless, by receiving the tax credit and voluntarily returning it, Plaintiffs were not injured. Plaintiff makes no allegation about the possible penalties or the basis for the penalty it was trying to avoid. It did not (and cannot) allege that the IRS clawed the tax credit back, that the

---

[2] This stands as a judicial admission. *Grynberg v. Bar S Servs., Inc.*, 527 Fed.Appx. 736, 739 (10th Cir 2013). It has the effect of withdrawing the fact that it received the credit and returned it to avoid penalties from issue. *Id.*

IRS audited the filing, or that the IRS issued penalties related to the tax credit. **To the contrary, Plaintiff admits it avoided hypothetical penalties.**

More importantly, to return the tax credit to the IRS, Plaintiff was required to participate in the Voluntary Disclosure Program ("VDP").[3] https://www.irs.gov/newsroom/irs-new-voluntary-disclosure-program-lets-employers-who-received-questionable-employee-retention-credits-pay-them-back-at-discounted-rate-interested-taxpayers-must-apply-by-march-22 (explaining that it is the only option for employers to return a tax credit if it believed it should not have received it). This VDP program was launched "to help businesses who want to pay back the money they received after filing ERC claims in error." *Id.* This option is not available to those who have not been paid or haven't cashed or deposited a check. https://www.irs.gov/coronavirus/frequently-asked-questions-about-the-employee-retention-credit-voluntary-disclosure-program, attached as Exhibit B.

According to the IRS, this VDP program offers the participants several benefits. "Those that the IRS accepts into the program will need to repay only 80% of the credit they received." "If the IRS paid interest on the employer's ERC refund claim, the employer doesn't need to repay that interest."

The IRS did not charge employers interest or penalties on any credits they repay if they repaid the whole 80%. "The IRS selected an 80% repayment because many of the ERC promoters charged a percentage fee that they collected at the time of payment *or in advance of the payment, and the recipients never received the full amount*." In other words, the IRS allowed

---

[3] The district court may take judicial notice of governmental websites. *See Boulder Falcon, LLC v. Brown*, 2024 WL 4564635, *1 (D. Utah 2024). https://www.irs.gov/coronavirus/frequently-asked-questions-about-the-employee-retention-credit-voluntary-disclosure-program.

Plaintiff to retain 20% of the credit specifically because of the fees incurred in filing for the credit through a service like ERC Specialists.

To participate in the program, Plaintiff had to meet certain qualifications:

- It was not under criminal investigation and did not have any notification that it was under criminal investigation.
- It was not under an IRS tax examination for the tax period for which they applied for the VDP.
- It did not receive an IRS notice or demand to repay any part of the ERC credit.
- The IRS has not received information from a third party that the taxpayer is not in compliance or has not acquired information directly related to the noncompliance.

https://www.irs.gov/newsroom/irs-new-voluntary-disclosure-program-lets-employers-who-received-questionable-employee-retention-credits-pay-them-back-at-discounted-rate-interested-taxpayers-must-apply-by-march-22.

Accordingly, in order to participate in the program, Plaintiff had to attest that it was not under any IRS investigation and it had no notice of noncompliance. *Id.*

By applying for this program and agreeing to the settlement, Plaintiff conceded that it was not under investigation and had no notice of noncompliance. Plaintiff had a choice in remedies. It could have opted to litigate the issue against ERC Specialists if any noncompliance was in fact detected (which there is not and will not). But Plaintiff did not. Instead, it entered a voluntary agreement with the IRS in which it received a true windfall—20% of the credit and essentially a guarantee that it will not be penalized or audited.

The allegations in the Complaint make clear there are no damages. Plaintiff is net positive through this process. In signing the Services Agreement, Plaintiff agreed to retain a CPA and/or attorney to guide them on filing for the tax credit. It acknowledged and assumed the risks of any purported audit or clawback. Plaintiff went forward anyhow.

Most importantly, Plaintiff receiving the benefits of ERC Specialists's work—the tax credit. It voluntarily returned the credit without any indication from the IRS that it was under

investigation or noncompliant with the CARES Act. In returning the funds, it was allowed to keep 20% plus the interest it earned through the more than two million dollars it received from the filing. And, because it only paid ERC Specialists 10% of the credit, Plaintiff is net positive. It is net positive and will not be audited by the IRS.

As the party invoking federal jurisdiction, Plaintiff bears the burden of demonstrating that it has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It must retain its personal interest in the dispute through all stages of litigation. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008). Therefore, even if this case were to proceed, Plaintiff must still show the manner and degree of injury at the successive stages of litigation. *Lujan*, 504 U.S. at 561.

Plaintiff cannot and will not be able to meet this burden. Plaintiff fails to (and cannot) allege a particularized and concrete harm. The voluntary return of a tax credit (received because of work provided by ERC Specialists) to avoid hypothetical fees in the future is not a harm. This is especially true where Plaintiff is more than $200,000 richer than when it entered the contract with ERC Specialists. This is not the concrete and particularized injury that gives Plaintiff standing.

## II.     The RICO claim is insufficiently plead and fails as a matter of law.

Count One of the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) as there is no cognizable way for Plaintiff to recover in this matter based upon the facts and circumstances under the pleading standards of Rule 8(a) and 9(b).

To maintain a private right of action under 18 U.S.C. section 1964(c), Plaintiff must plead and ultimately prove: that the defendant violated section 1962, that Plaintiff's business or

property was injured, and that the ERC Specialists's violation is the cause of that injury. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017).

To establish a claim under section 1962, Plaintiff must show that ERC Specialists (B) participated in the conduct (B) of an enterprise (C) through a pattern (4) of racketeering activity. *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1273 (10th Cir.1989) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

Here, Plaintiff offers nothing more than a recitation of the elements of section 1962 in the form of legal conclusions. This is insufficient under the plausibility pleading requirements of rule 8(a). *Safe Streets Alliance*, 859 F.3d at 881.

### A.   <u>No facts show participation.</u>

The United State Supreme Court has adopted the "operation or management" test, which requires that defendants have participated in the operation or management of the RICO enterprise before liability may be imposed. *Reves v. Ernst & Young (Reves II)*, 507 U.S. 170, 177-80 (1993). In other words, to be liable under section 1962(c), "one must have some part in directing those affairs" of the enterprise. *Id.*

Here, no facts have been alleged to establish that any one defendant participated in the conduct of the enterprise. Instead, Plaintiff broadly asserts one corporation and seven of its officers have violated the RICO statute. There is no explanation for the individuals' role in the alleged enterprise. And no facts have been plead to show how each individual controlled or directed the actions of the alleged enterprise.

A heightened pleading standard is required for allegation of mail and wire fraud. *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). This means that Plaintiffs must "…'set forth the time, place and contents of the false representation, the identity of the party making the false

statements and the consequences thereof.'" *George v. Urban Settlement Servs.,* 833 F.3d 1242*, 1254 (quoting *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236). Additionally, because wire and mail fraud are alleged as the predicate acts in Quality Telecom's RICO claims, Quality Telecom must allege the number of wires, the precise dates, and how they further the scheme. See *Weiszmann v. Kirkland and Ellis,* 732 F.Supp. 1540, 1546 (D.Colo.1990). The defendant must participate in each with the specific intent to defraud. See *United States v. Washita Constr. Co*., 789 F.2d 809, 817 (10th Cir. 1986). When a Plaintiff is alleging more than one defendant is liable, he or she is under a Rule 9(b) obligation to specify which defendant told which lie and under what circumstances. *Saine,* 582 F.Supp. at 1303.

> A RICO defendant also needs to be protected from unscrupulous claimants lured by the prospect of treble damages, and it should be the policy of the law, within the procedural constraints of our system, to provide this protection. A charge of racketeering, with its implications of links to organized crime [and attendant consequences to a person's reputation and goodwill], should not be easier to make than accusations of fraud. RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon. Irresponsible or inadequately considered allegations should be met with severe sanctions pursuant to Rule 11, Fed. R. Civ. Pro.

*Id.* at 1306. In other words, the heightened pleading requirement has the specific purpose—"to inhibit the filing of complaints as a pretext to discover unknown wrongs, to protect the defendant's reputation, and to give notice to the defendant regarding the complained of conduct." *Farlow v. Peat, Marwick, Mitchell & Co*., 956 F.2d 982, 987 (10th Cir.1992). "In filing such serious allegations one may not shoot first and aim later" *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D. Colo. 1995).

Here, Plaintiff fails to adequately plead the predicate acts of mail and wire fraud by setting forth the "time, place, and contents of the false representations, the identity of the party making the false statements and the consequences thereof." *George*, 833 F.3d at 1254. It does

nothing to state which statements are false or who made them. It is not even clear to whom the statements or representations were made—Plaintiff or the IRS.

By Plaintiff's own admissions, it received the tax credit through the work provided by ERC Specialists. Complaint ¶ 43. These were the exact services ERC Specialists advertised and performed according to the Services Agreement. Plaintiff voluntarily returned the credit to avoid hypothetical fees. And now wants a refund (plus treble damages permitted by the RICO statute) for the work successfully provided. It is difficult to see what misrepresentation was made or how ERC Specialists alleged deceit was even connected to Plaintiff's voluntary return of the credit. Their main claim is that it is ERCS intent to obtain large contingency fees as payment, which is a recognized practice upheld by the Federal Courts. See *Ridgely v. Lew*, 55 F.Supp.3d 89 (D.D.C. 2014)).

Setting aside for the moment the particularity requirements of rule 9(b), Plaintiff does not even meet the pleading standards under rule 8(a). As cautioned against in *Twombly*, Plaintiff merely relies on "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. It does nothing to sufficiently plead the role each defendant had in the alleged scheme and how they relate to one another. Regarding the underlying predicate acts, Plaintiff fails to allege who sent the communications, what the communications stated, when it was stated, or how the information was relied upon.

### B. <u>Nothing shows ERC Specialists to be an "enterprise".</u>

Section 1962(c) requires that the "person" and the "corporation" engaged in racketeering activities be different. *Board of County Comm'rs of San Juan Cty v. Liberty Group*, 965 F.2d 879, 886 (10th Cir. 1992); *see also Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir. 1987) (requiring the individual to benefit the corporation). To find that ERC

Specialists violated RICO, liability must be based on "an association with some entity separate from itself." *Id.* at 885.

The individuals must have an existence and purpose distinct from the corporation. *Id.* "The language of the statute clearly contemplates that the 'person' charged will be distinct from the 'enterprise,' since a person cannot logically be 'employed by or associated with' himself." *Id.* at 885. In short, a company "can perform an action or make a decision only through human intermediaries, such as the individual defendants here." *Id.* at 886. "Courts have accordingly found that the officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Id.*

Here, Plaintiff has crafted a colorful argument, full of conjectures which attempt to weave a web of fraud and deceitful behavior. But it alleges nothing more than a legitimate business operating with the sole purpose of assisting businesses in obtaining the ERC tax credit. No individual has been alleged to have acted outside its role as an officer of the company. https://ercspecialists.com/team. More importantly, nothing can be alleged to show that any of the individuals acted on their own (outside their role of the company) to benefit an enterprise. Accordingly, without allegations to show that ERC Specialists acted with someone outside of its officers, no enterprise can be established.

If providing services under a contract amounted to wire fraud, every sour business dealing would be raised as violation of the RICO statute. This is especially true in this case where the services provided was filing amended tax forms for Plaintiff in which the IRS approved the forms and gave Plaintiff a tax credit. It is hard to imagine a scheme to defraud where the services offered were accomplished as promised.

**C.  There is no pattern of racketeering.**

A pattern requires the showing of a relationship between predicate acts and the threat of continued activity—Relationship and Continuity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). "It is this factor of *continuity plus relationship* which combines to produce a patter." *Id.* (citation and internal quotation marks omitted).   The continuity requirement reflects Congress's concern with RICO with long-term criminal conduct. *Id.* at 242. Plaintiffs must prove either "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a series of related predicate acts committed over a substantial period of time (known as closed-ended continuity) or show past conduct that by its nature projects into the future with a threat of repetition (known as open-ended continuity). *See id.* at 241-42.

Here, Plaintiff fails to allege facts that establish continuity, either open or closed. The nature of the tax credit makes any purported scheme extremely limited. The credit only applies to certain employers for a very limited amount of time. It was only available for five quarters—two quarters of the tax year 2020 and three quarters of the year 2021. And the IRS processes amended tax forms for this credit on a limited basis. Put differently, the work ERC Specialists provides had a very short shelf life.

Indeed, there can be no threat of continued "criminal activity" as it relates to Plaintiff or any other business because ERC Specialists stopped providing tax filing services for the credit long ago. https://app.ercspecialists.com/. This is inline with the IRS's moratorium on processing amended tax filings in September 2023. This alone should disqualify Plaintiff's claim form satisfying the necessary elements on the grounds of open continuity.

More importantly, Plaintiff filed to plead enough predicate acts over a sufficient period. The parties were only involved for a limited time and purpose. There was one goal to their relationship—ERC Specialists would provide Plaintiff with tax filing services in exchange for a

percentage of the tax credit. ERC Specialists provided those services, Plaintiff paid 10% of the tax credit, and Plaintiff received the tax credit. Nothing more occurred between them.

"Without a threat of continued illegal activity, a single scheme rarely supports finding continuity." *Johnson v. Heath*, 56 F.4th 851, 862 (10th Cir. 2022). "And a single scheme even less likely supports a continuity finding when the scheme targets only 'one discrete goal.'" *Id.* (quoting *SIL-FLO*, 917 F.2d at 1516).

Because the only alleged scheme has the discrete goal of enticing Plaintiff to use its services to obtain the tax credit there is no continuity alleged. And the allegations do nothing to support a finding of extensiveness. Even if all the allegedly fraudulent statements made in obtaining Plaintiff's tax credit constitutes predicate acts, the predicates are all so similar and amount to a single, noncomplex scheme with a discrete goal. *Id.* This is not sufficient to plead the long-term criminal activity RICO targets and cannot support a finding of closed-ended continuity.

Finally, Plaintiff fails to plead facts that would show causation. It is unclear how any alleged wire or mail fraud caused the alleged injury. There is alleged no connection between the alleged puffery or inflated worth and Plaintiff's voluntarily returning the tax credit.

In sum, Plaintiff's claim under the RICO statute is insufficiently plead and Plaintiff fails to allege a claim for which relief can be granted.

### III.     The Utah Pattern of Unlawful Activity Act claim fails as a matter of law.

Plaintiff's second claim for relief under the Utah Pattern of Unlawful Activity Act ("UPUA") fails. Plaintiff failed to allege an injury arising from ERC Specialists' conduct. Furthermore, Plaintiff has failed to plead with required specificity the conduct or statements that it alleges ERC Specialists made that were unlawful. Accordingly, Plaintiff's second cause of

action fails to state a claim upon which relief can be granted and its claims under UPUA should be dismissed.

Under UPUA, "the plaintiff is required to show injury due to a 'pattern of unlawful activity. . . .' *Carlton v. Brown*, 2014 UT 6, ¶ 43, 323 P.3d 571. Essentially a plaintiff "must show that (1) the defendant is engaged in a pattern of unlawful activity and (2) the defendant is involved in an enterprise." *Holbrook v. Mater Protection Corp.*, 883 P.2d 295, 302 (Utah Ct. App. 1994). "Additionally, UPUA requires the pleading to be made with particularity." *Id*. "This means that the pleadings must demonstrate that the alleged activity would be illegal in Utah and would fall under UPUA's statutory provisions." *Segment Consulting Mgmt., LTD v. Streamline Mfg., LLC*, 2020 WL 907154 at *2 (D. Utah 2020).

"[A] 'pattern of unlawful activity' includes 'engaging in conduct which constitutes the commission of at least three episodes of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics.'" *Hill v. Estate of Allred*, 2009 UT 28, ¶ 38 (Utah 2009) (quoting Utah Code Ann. § 76-10-1602(2)). The Utah Supreme Court has clarified "that 'the proper test for determining whether there was a pattern of unlawful activity is whether there was 'a series of related predicates extending over a substantial period of time' or a demonstrated threat of continuing unlawful activity and not whether there were multiple schemes.'" *Carlton*, 2014 UT 6, ¶ 44 (quoting *Hill*, 2009 UT 28, ¶ 41). And the statute requires "the elements of each claim or cause of action shall be stated with particularity against each defendant." Utah Code Ann. § 76-10-1605 (7).

Here, Plaintiff fails to meet its prima facie burden on its claims arising under UPUA. First, Plaintiff fails to allege three episodes of unlawful activity arising through a substantial

period of time. The three episodes of unlawful activity which Plaintiff allege all fail. Nor does Plaintiff make its allegations for the alleged unlawful activity as required by the statute, with particularity as to each defendant. Finally, Plaintiff has failed to allege any damages or injury arising from the alleged unlawful activity. Accordingly, Plaintiff fails to state a claim upon which relief can be granted under UPUA and the Court should dismiss count two in Plaintiff's Complaint.

### A.  **Plaintiff fails to allege three episodes of unlawful activity which occurred over a substantial period of time or which have a continuing threat of continuing unlawful activity.**

The proper test to meet for a plaintiff to show a pattern of unlawful activity requires allegations that "there was 'a series of related predicates extending over a substantial period of time' or a demonstrated threat of continuing unlawful activity." *Carlton*, 2014 UT 6 at ¶ 44. Here, Plaintiff merely alleges an arm's length transaction between two business entities. Plaintiff contracted with ERC Specialists to apply for the Credit, and ERC Specialists performed.

In any event, Plaintiff alleges three activities which it contends qualify as a pattern of unlawful activity: 1) ERC Specialists sent a false written statement to the IRS by submitting the IRS Form 941-x on Plaintiff's behalf; 2) ERC Specialists committed theft by deception when it "puffed" the value of its services; and 3) Plaintiff points to its allegations arising under federal law regarding its RICO claims. But Plaintiff's allegations of each of those activities fail, and even if the Court does not find that all three fail, even if one fails Plaintiff cannot meet its burden of showing three episodes of unlawful activity.

### 1.   *Plaintiff failed to plead with particularity any false written statement.*

Plaintiff sets forth the conclusory allegation that "Defendants engaged in multiple instances of making written false statements in official matters with the intent to deceive a public servant" and point to the statutory definition of "public servant." Compl. ¶ 49. But this

conclusory allegation fails to plead with particularity, against each defendant, the 'who,' 'what,' 'when,' and 'where' of the alleged false statement. It ignores the statute's whole definition. And Plaintiff ignores the fact that the IRS Form 941-x was prepared using documents it provided to ERC Specialists.

Under the statute, "[a]n actor commits making a written false statement if: . . . (b) with intent to deceive a *public servant* in the performance of the *public servant's* official function . . . ." Utah Code Ann. § 76-8-504 (2) (emphasis added).

The statute defines "public servant" as "a person hired or paid by a public entity to perform a government function." Utah Code 76-1-101.5 (16)(a)(iii). In turn, a "public entity" is defined as: "(a) the state, or an agency, bureau, office, department, division, board, commission . . . or other instrumentality of the state; (b) a political subdivision of the state . . . (c) an . . . other instrumentality of a political subdivision of the state" or another entity allowed to hold money in the possession of a state entity. *Id*. § -101.5(13)-(14).

The definition makes clear that the statute only makes it unlawful to make false statemens to *state* public servants. This makes sense because the Utah legislature cannot enact laws that govern the conduct regarding federal agencies or employees. Accordingly, Plaintiff's bald allegation that the IRS, a federal agency, qualifies as a public servant under the statute falls short. Accordingly, under the statute's plain language, Plaintiff's conclusory allegations fail to state a claim for relief upon which relief can be granted.

Nevertheless, assuming for the sake of argument that the IRS can be considered a state entity under the statute, Plaintiff still fails to state a claim upon which relief can be granted. Plaintiff alleges that the responses it provided to ERC Specialists "would indicate to *anyone* (especially self-proclaimed 'experts') that further analysis is required, as the responses on their

face are *wholly insufficient* to determine a valid ERTC claim." *See* Compl. ¶ 28 (emphasis added).

The only way ERC Specialists can submit an IRS Form 941-x on a customer's behalf is through the information provided by the customer. Indeed, the Services Agreement makes clear that Plaintiff agreed "all information provided . . . to ERC Specialists related to the Tax Credit . . . is true and correct." Services Agreement 3. It also agreed to seek advice by a CPA or attorney regarding its eligibility before filing. *Id.* Thus, by Plaintiff's own allegations, it knew or should have known the information it provided was insufficient or inaccurate.

More to the point, Plaintiff's bald allegations fail to plead with particularity the false statement made by any particular defendant. *See* Utah Code Ann. § 76-10-1605(7). But Plaintiff's broad allegations merely point to "Defendants" collectively without particularity. It says nothing about which Defendant made the alleged false statement. And it does nothing to support the allegation that Defendants had the requisite intent.

Moreover, Plaintiff fails to plead with particularity the specific content of the Form 941-x it alleges was false, or the amount of money it received from any particular Form 941-x that was wrongful. *See U.S. ex rel. Sikkenga v. Regence Bluecross BlueShield of Utah*, 472 F.3d 702, 727-28 (10th Cir. 2006). Rule 9(b) requires a plaintiff "provide details that identify particular false claims for payment that were submitted to the government . . . , including details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government" *Id.* (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Plaintiff merely points to the Form 941-x generally as being a false statement. Accordingly, Plaintiff's contention that an episode of unlawful activity occurred when ERC Specialists transmitted Plaintiff's IRS Form 941-x fails.

2.    *Plaintiff failed to state a claim for theft by deception.*

To establish its claim of theft by deception, Plaintiff must state with particularity that theft occurred by deception. Under Utah Code § 76-6-405(2) "an actor commits theft by deception if the actor obtains or exercises control over property of another person: (i) by deception; and (2) with a purpose of depriving the other person of property." *Id*. Notably, the statute provides "[t]heft by deception does not occur when there is only: (a) falsity as to matters having no pecuniary significance; or (b) puffing by statements unlikely to deceive an ordinary person in the group addressed." *Id*. (4).

Utah law has recognized that there are three components to satisfy the "by deception" requirement: (1) the deception meets the statutory definition; (2) the deception occurred contemporaneously with the transaction; and (3) reliance on the deception. *State v. Doe*, 825 P.2d 681, 685 (Utah Ct. App. 1992).

Under the first component, the statutory definition of deception can be found at Utah Code Ann. § 76-6-401(1). Plaintiff does not plead with particularity any statement made by ERC Specialists connected to any of the statutory definitions listed there. Instead, it alleges that ERC Specialists "through 'puffing' the worth of their services both verbally and through false advertisements" somehow committed theft by deception. The 'puffery' of which Plaintiff complains consists of customer testimonials on ERC Specialists website, *see* Compl. ¶¶ 22-25, and that ERC Specialists listed its advisory board members on its website. *See* Compl. ¶ 55. But puffery has been carved out of the definition of deception.

The theft by deception statute exception provides, "[t]heft by deception does not occur when there is only: (a) falsity as to matters having no pecuniary significance; or (b) puffing by statements unlikely to deceive an ordinary person in the group addressed." Utah Code Ann. § 76-

6-405(4). Accordingly, by Plaintiff's own admission, ERC Specialists' activity does not meet the statutory requirements. Puffery about whether someone is on the board or about customer testimonials are the kind of "falsity as to matters having no pecuniary significance" that is expressly excluded. And it would be unlikely to deceive an ordinary person in the group addressed. *See* Compl. ¶¶ 53-55. Indeed, Companies like ERC Specialists frequently tout their expertise and emphasize the experience of their team members.



**Five Former IRS Commissioners**

Our greatest asset is the depth of talent that has joined the alliantNational team. From former IRS Commissioners to Senior Counsel to the U.S. Senate Finance Committee, our team of experts is unmatched by any other tax controversy group in the country.

| **Darren Guillot** | **Eric Hylton** | **Kathy Petronchak** | **Steven Miller** | **Mark W. Everson** |
| alliantgroup National Director | alliantgroup National Director | alliantgroup Director of IRS Practice & Procedure | alliantgroup National Director of Tax | alliantgroup Vice Chairman |

*See* https://www.alliantgroup.com/erc-tcs/.

This type of puffery is not the deception the legislature considers "deceptive." Thus, Plaintiff's complaint fails to satisfy the first component of theft by deception.

And under the third component, Plaintiff has failed to plead that it relied on those statements in entering the transaction. Indeed, under Utah law it is required for a plaintiff to show that the "misrepresentation constituted *a substantial causal influence* upon the [plaintiff's] decision. . . ." *State v. Doe*, 825 P.2d at 687 (emphasis added). Even if a plaintiff "is deceived, if he does not rely on the deception in parting with his property, there has been no theft 'by deception.'" *Id*. 686-87 (quoting *State v. Jones*, 657 P.2d 1263, 1267 (Utah 1982)). Because Plaintiff failed to allege that the 'puffery' it complains of caused it to enter into an agreement with ERC Specialists, Plaintiff also cannot satisfy the second component of theft by deception.

Accordingly, Plaintiff has failed to plead any non-conclusory facts that would support its allegations that ERC Specialists committed theft by deception. As such, Plaintiff has failed to state a claim upon which relief can be granted.

> 3.    *Plaintiff fails to articulate that its allegations under U.S.C. 1961 constitute a separate episode of unlawful activity.*

As analyzed above, to state a claim under UPUA a Plaintiff must allege three separate episodes of unlawful activity occurring over a substantial period of time. But, under this section of allegations, Plaintiff presumes Defendant's violation of the RICO statute to establish a third episode of unlawful activity. *See* Compl. ¶ 56. Plaintiff does not allege with the required particularity that the 'racketeering' consisted of a separate and distinct unlawful episode to support its allegations arising under UPUA. Essentially, Plaintiff hopes for double recovery— using any potential violation of the RICO statute to establish the Utah's counterpart.

In any event, for the same reasons Plaintiff's RICO claim fails, the second cause of action fails. No fraud is alleged with sufficient particularity. No injury has been sufficiently alleged. And there is no connection between the alleged fraud and Plaintiff's voluntary return of the credit. Accordingly, Plaintiff cannot establish three separate criminal acts.

Plaintiff has therefore failed to state a claim upon which relief can be granted. The Court should grant this motion to dismiss with prejudice and dismiss Plaintiff's claims.

**B.   <u>Plaintiff has failed to allege that it suffered any injury with regard to its claims under UPUA.</u>**

Even if Plaintiff could be said to have plead sufficient facts to find a pattern of unlawful behavior under UPUA, it has failed to articulate any injury. Under UPUA, "the plaintiff is required to show injury due to a "pattern of unlawful activity" *Carlton*, 2014 UT 6, ¶ 43. When

Plaintiff's complaint is fully analyzed, it is clear that Plaintiff did not suffer an injury, but actually received and retained money from IRS.

Plaintiff makes no allegation of damages relating to its claims under UPUA. Under the second count, no allegations of damage or injury has even been mentioned. For the purpose of this motion, however, Defendants assume that Plaintiff's alleged damages are the same as those set out in Count One. Complaint ¶¶ 42-44.

Again, Plaintiff concedes it received the tax credit. It was only after Plaintiff got cold feet that it decided to return a portion of the Credit it received. And as explained above, Plaintiff retained more of the credit that it paid ERC Specialists. Thus, because Plaintiff did not suffer any actual damages, its claims under UPUA fail.

## IV.    The Truth in Advertising Violations claim fails as a matter of law.

As in all other instances, count three of the Complaint fails as a matter of law. By its own allegations, Plaintiff must make allegations that show ERC Specialists acted intentionally. Complaint ¶¶ 59-64. Moreover, it must allege facts to show that the misunderstanding is the cause of its injuries.

Again, there is no allegation to support the conclusion that ERC Specialists engaged in deceptive practices. Nothing indicates what renders the statements false or misleading.

In any event, Plaintiff cannot establish that it was indeed mislead. The parties entered a contract (incorporated into the Complaint by reference) in which Plaintiff expressly acknowledged that ERC Specialists "only provides assistance in calculating the amount of the tax credit, if any, that client may be eligible to receive." Ex. A, § 3b. It acknowledged that it understood that "ERC Specialists does not provide legal advice and [Plaintiff] is solely responsible for determining, either itself or with the assistance of an attorney or certified public

24

accountant, whether it is eligible for the tax credit." *Id.* It also represented that it would obtain an opinion from a lawyer or CPA before filing for the tax credit. *Id.*

Based on these express representations and acknowledgments, Plaintiff has not and cannot plead facts that establish it was misled by mere puffery on ERC Specialists's website. It warranted that it received outside guidance before applying for the credit. Accordingly, any causal connection is severed.

### V.   Plaintiff fails to allege independent duties that permit the statutory and fraud actions.

Although Plaintiff concedes there is a contract between the parties and the only purported damages are monetary, Plaintiff does nothing to explain why the economic loss rule would not bar the fraud-based claims. "Whether the economic loss rule applies, depends on whether a duty exists independently of any contractual obligations between the parties." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 208 F.Supp.3d 1193, 1199 (D. Utah 2016) (cleaned up). "To determine whether a duty arises outside of a contract, we analyze the nature of the parties' relationship." *Donner v. Nicklaus*, 778 F.3d 857, 873 (10th Cir. 2015) (applying Utah law).

No facts alleged in the Complaint establish the existence of an independent duty outside of the contract. As such, the Complaint should be dismissed as a matter of law because the fraud-based claims are barred under the economic loss rule.

**CONCLUSION**

DATED November 11, 2024.

**STRONG & HANNI**

*/s/ Scarlet R. Smith*
Ryan P. Atkinson
Scarlet R. Smith
Jordan T. Greenburg
*Attorneys for Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 11, 2024, I electronically filed a true and correct copy of this **Motion to Dismiss** with the Clerk of the Court using the CM/ECF system, which sent notification to the following:

KIGAN MARTINEAU    (X) Electronic Filing
Utah Bar No. 15299     (  ) U. S. Mail, Postage Prepaid
Benzion and Martineau    (  ) Hand Delivered
162 N 400 E bldg A, # 101   (  ) Overnight Mail
St. George, UT 84770    (  ) Email
Kigan@4theinjured.com

JANINE M. CAMPANARO   (X) Electronic Filing
PHV Admission Pending    (  ) U.S. Mail, Postage Prepaid
Utah Bar Admission Pending   (  ) Hand Delivered
Zerbe, Miller, Fingeret, Frank & Jadav (  ) Overnight Mail
3009 Post Oak Blvd., Suite 1700  (  ) Email
Houston, Texas 77056
jcampanaro@zmflaw.com
vdharmaraj@zmflaw.com

*/s/ Lexi Stuart*